UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

BARBARA GARDNER,

     Plaintiff,

v.                             Case No.:  2:20-cv-331-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____/

**<u>OPINION AND ORDER</u>**

Plaintiff Barbara Gardner filed a Complaint on May 7, 2020.  (Doc. 1).
Plaintiff seeks judicial review of the final decision of the Commissioner of the Social
Security Administration ("SSA") denying her claim for a period of disability,
disability insurance benefits, and supplemental security income.  The Commissioner
filed the transcript of the administrative proceedings (hereinafter referred to as "Tr."
followed by the appropriate page number), and the parties filed a joint memorandum
detailing their respective positions.  (Doc. 21).  For the reasons set forth herein, the
decision of the Commissioner is **AFFIRMED** pursuant to § 205(g) of the Social
Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity
by reason of any medically determinable physical or mental impairment that can be
expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511, 416.905 - 416.911.  Plaintiff bears the burden of persuasion through step four, while the burden shifts to the Commissioner at step five.  *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

## II.    Procedural History

Plaintiff previously filed a claim for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") on March 14, 2017, alleging a disability onset date of January 12, 2017.  (Tr. at 108, 120).  On April 10, 2017, Plaintiff provided the State Disability Determination Services with a new telephone number and informed the State Disability Determination Services that she was willing to attend a consultative examination.  (*Id.* at 127).  On April 17, 2017, Plaintiff's new number was no longer in service, and, on May 15, 2017, Plaintiff failed to attend her consultative examination.  (*Id.*).  On May 19, 2017, the State Disability Determination Services determined that there was insufficient information to render a decision in Plaintiff's case, (*id.*), and Plaintiff failed to timely appeal the decision, (*id.* at 10).

Subsequently, Plaintiff protectively filed a claim for DIB and SSI on August 8, 2017, again alleging a disability onset date of January 12, 2017.  (*Id.*).[1]  Plaintiff's claim was denied at the initial level on September 7, 2017, and upon reconsideration on December 13, 2017.  (*Id.*).  Plaintiff requested an administrative hearing, which was held on October 2, 2018, before Administrative Law Judge ("ALJ") Ryan Johannes.  (*Id.* at 49-85).  The ALJ issued an unfavorable decision on March 25, 2019, which included a denial of Plaintiff's implied request to reopen her previous application.  (*Id.* at 7-26).  On March 19, 2020, the Appeals Council denied Plaintiff's request for review.  (*Id.* at 1-6).  Plaintiff then filed her Complaint with this Court on May 7, 2020, (Doc. 1), and the parties consented to proceed before a United States Magistrate Judge for all purposes, (Docs. 10, 13).  The matter is, therefore, ripe.

## III.       Summary of the Administrative Law Judge's Decision

An ALJ must follow a five-step sequential evaluation process to determine if a claimant has proven that she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)). An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix

---

[1]  The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations apply in Plaintiff's case because Plaintiff filed her claim after March 27, 2017.

1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy. *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004). The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five. *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff met the "insured status requirements of the Social Security Act through September 30, 2019." (Tr. at 12). At step one, the ALJ found that Plaintiff "has not engaged in substantial gainful activity since January 12, 2017, the alleged onset date (20 [C.F.R. §§] 404.1571 *et seq.,* and 416.971 *et seq.*)." (*Id.* at 13). At step two, the ALJ found that Plaintiff has the following severe impairments: "schizoaffective disorder, unspecified depressive disorder, and vertigo (20 [C.F.R. §] 404.1520(c) and 416.920(c))." (*Id.*). At step three, the ALJ determined that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§] 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926)." (*Id.*).

At step four, the ALJ found that Plaintiff has the residual functional capacity ("RFC"):

> [T]o perform a full range of work at all exertional levels but with the following nonexertional limitations: frequently handle and finger; understand, remember, and carry out simple, simple, [sic] routine, tasks and make simple work related decisions; never work with the general public; occasionally work with supervisors and coworkers; routine work setting; occasional changes in work routine.

4

(*Id.* at 15).  The ALJ determined, therefore, that Plaintiff "is capable of performing

her past relevant work as a routing clerk (20 [C.F.R. §§] 404.1565 and 416.965)."  (*Id.*

at 18).  Accordingly, the ALJ held that Plaintiff "has not been under a disability, as

defined in the Social Security Act, from May 20, 2017, the day after the prior final

determination, through the date of this decision (20 [C.F.R. §§] 404.1520(g) and

416.920(g))."  (*Id.*).

## IV.      Standard of Review

The scope of this Court's review is limited to determining whether the ALJ

applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir.

1988), and whether the findings are supported by substantial evidence, *Richardson v.

Perales*, 402 U.S. 389, 390 (1971).  The Commissioner's findings of fact are

conclusive if supported by substantial evidence.  42 U.S.C. § 405(g).  Substantial

evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create

a suspicion of the existence of a fact, and must include such relevant evidence as a

reasonable person would accept as adequate to support the conclusion.  *Foote v.

Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835,

838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the

district court will affirm, even if the reviewer would have reached a contrary result as

finder of fact, and even if the reviewer finds that "the evidence preponderates

against" the Commissioner's decision.  *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3

(11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991).  The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (a court must scrutinize the entire record to determine reasonableness of factual findings).

## V.     Analysis

On appeal, Plaintiff raises three issues.  As stated by the parties, the issues are:

1.     Whether the ALJ Erred by Finding that Plaintiff's Impairments Did Not Meet or Medically Equal the Criteria of Listing 12.03;

2.     Whether the ALJ Erred by Not Reopening Plaintiff's Prior DIB and SSI [A]pplications; and

3.     Whether the ALJ's RFC [F]inding is [S]upported.

(Doc. 21 at 21).  The Court addresses each in turn below.

### A.     The ALJ Did Not Err in Finding that Plaintiff's Impairments Did Not Meet or Medically Equal the Criteria of Listing 12.03.

Plaintiff first argues that "[t]he ALJ failed to properly evaluate Plaintiff's schizoaffective disease at step three, resulting in an unsupported finding that her impairments did not meet or medically equal the criteria of Listing 12.03."  (*Id.* at 21-22).  Specifically, Plaintiff asserts that the ALJ failed to provide substantial evidence to support his finding that Plaintiff did not meet the "paragraph C" criteria because the ALJ failed to consider Plaintiff's need for medical treatment, mental health therapy, and her need for a structured and supportive environment.  (*Id.* at 22).

Plaintiff maintains that to meet Listing 12.03, she must satisfy the criteria in either paragraphs A and B or paragraphs A and C. (*Id.* (citation omitted)). Plaintiff contends that "it cannot be reasonably argued" that paragraph A is not satisfied. (*Id.* (citations omitted)). In support, Plaintiff notes that the ALJ did not find that Plaintiff fails to satisfy the paragraph A criteria and provides evidence showing that she meets the criteria. (*See id.* at 22-23 (citations omitted)). Thus, Plaintiff asserts that because she meets the criteria of paragraph A, a finding of disability is required if she meets the criteria of paragraph C. (*Id.* at 23).

Plaintiff asserts that paragraph C requires that her mental disorder be "serious and persistent," evinced by:

> (1) Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of [the] mental disorder (see 12.00G2b); and
>
> (2) Marginal adjustment, that is, [the] minimal capacity to adapt to changes in [the claimant's] environment or demands that are not already part of [the claimant's] daily life (see. 12.00G2c).

(*Id.* at 23-24 (quoting 20 C.F.R. § 404, Subpart P, Appendix 2, Listing 12.03) (alterations in original)).

Plaintiff argues that she meets paragraph C because "the evidence shows that Plaintiff's impairment was serious and persistent" as required by the Listing. (*Id.* at 24 (citation omitted) (internal quotation omitted)). In support, Plaintiff provides citations to records showing that during the relevant time period, she was admitted

to David Lawrence Center's Crisis Stabilization Unit and continued to receive counseling and medication for her symptoms for more than two years. (*Id.* at 24 (citing Tr. at 7, 419, 430, 431, 433, 437, 441, 460, 556, 561, 563, 565, 568, 569, 571, 572, 575-77, 579, 581, 586, 588, 590, 592, 601, 607, 610, 612, 613, 615, 616, 782, 784, 787-90)). Plaintiff maintains that despite these records, "the ALJ summarily found that 'the evidentiary record fails to indicate or suggest that the claimant's mental disorder is "serious and persistent,"'" providing no rationale or explanation to reconcile the finding. (*Id.* (quoting Tr. at 14)).

Additionally, Plaintiff essentially contends that the evidence shows that the severe and persistent nature of the impairment is supported by medical documentation. (*See id.* at 25-26 (citations omitted)). Specifically, Plaintiff highlights that she was psychiatrically hospitalized in February 2017 and March 2017. (*Id.* at 26 (citing Tr. at 419, 428, 431, 556, 561, 563)). Additionally, Plaintiff maintains that the ALJ did not adequately consider Dr. Reni's opinions supporting her need for a highly supported structured environment. (*See id.* at 26-31 (citing Tr. at 291-92, 295, 433, 440, 566, 567, 575, 579, 581, 590, 592, 596-97, 601, 607, 610, 611, 612, 615, 782, 787, 788-89)). Furthermore, Plaintiff argues that "[t]hroughout the[] more than two years leading up to the ALJ's March 28, 2019 decision, Plaintiff's treatment at the David Lawrence Center included ongoing counseling and medication management," and – despite perceived improvements – she continued to be regularly assessed. (*Id.* at 31 (citing Tr. at 7, 430, 431, 441, 568, 569, 571, 572, 575-77, 579, 581, 586, 588, 590, 592, 601, 607, 610, 612, 613, 615, 616, 782, 784, 787-90)).

Finally, Plaintiff essentially contends that her hearing testimony brought the ALJ's attention to "[t]he significance of Plaintiff's relative stability during treatment, and while in a highly supportive environment." (*See id.* at 32-33 (citing Tr. at 54-55, 56, 66-67, 69, 70-71, 75, 76)).

Plaintiff ultimately argues that despite the evidence, "the ALJ summarily concluded that '[t]he evidentiary record fails to indicate or suggest that the [paragraph C criteria is met].'" (*Id.* at 33 (quoting Tr. at 14) (alterations in original)). Plaintiff again notes that this finding was made with no discussion of or citation to any evidence. (*Id.* (citations omitted)). Thus, Plaintiff contends that the ALJ failed to comply with his duty to consider the factors set forth in paragraph C and, therefore, the ALJ's decision is not supported by substantial evidence. (*Id.*). Furthermore, Plaintiff asserts that because she satisfies Listing 12.03(A) and (C), "reversal with an Order to grant benefits is warranted." (*Id.* at 34).

In response, Defendant argues that Plaintiff bears the burden of showing that she meets the specific criteria of the Listings. (*See id.* at 34-35 (citations omitted)). Defendant contends, however, that even assuming Plaintiff meets the requirements of paragraph A, she has failed to show that she meets the criteria of paragraph C. (*Id.* at 35). In support, Defendant maintains that because the ALJ's decision only addresses Plaintiff's conditions between May 20, 2017, through March 28, 2019, Plaintiff facially cannot show that she has "a documented disorder lasting more than two years." (*Id.* at 35-36).

Moreover, Defendant argues that Plaintiff cannot show that she meets the criteria of paragraph C because while the ALJ did not explicitly address the criteria, he found that Plaintiff had only mild limitations in adapting and managing herself and supported this finding by evidence of record during the psychiatric review technique ("PRT"). (*Id.* (citing Tr. at 14, 66-68, 290-97, 568, 587, 769-70, 776)). Thus, Defendant contends that substantial evidence supports the ALJ's finding that Plaintiff is not disabled under Listing 12.03. (*Id.* at 36-37).

At step three, to meet the requirements of a Listing, a plaintiff must "have a medically determinable impairment(s) that satisfies all of the criteria in the listing." 20 C.F.R. § 404.1525(d). The Listings of Impairments in the Social Security Regulations identify impairments that are considered severe enough to prevent a person from engaging in gainful activity. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1. If a plaintiff can meet a listed impairment or otherwise establish an equivalence, then a plaintiff is presumptively determined to be disabled and the ALJ's sequential evaluation of a claim ends. *Edwards v. Heckler*, 736 F.2d 625, 626 (11th Cir. 1984). The burden is on Plaintiff to show that she meets the Listings. *Wilkinson on Behalf of Wilkinson v. Bowen*, 847 F.2d 660, 662 (11th Cir. 1987). If an impairment manifests only some of the criteria, then it does not qualify, no matter how severe the impairment. *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990).

To meet a Listing, a plaintiff must have a diagnosis included in the Listings, and "must provide medical reports documenting that the conditions meet the specific criteria of the Listings and the duration requirement." *Wilson v. Barnhart*, 284 F.3d

1219, 1224 (11th Cir. 2002) (citing 20 C.F.R. § 1525(a)-(d)). "If a claimant has more than one impairment, and none meets or equals a listed impairment, the Commissioner reviews the impairments' symptoms, signs, and laboratory findings to determine whether the combination is medically equal to any listed impairment." *Id.* (citing 20 C.F.R. § 404.1526(a)).

The pertinent Listing at issue here, 12.03, states, in relevant part:

> **12.03 Schizophrenia spectrum and other psychotic disorders . . ., satisfied by A and B, or A and C:**
>
> A.  Medical documentation of one or more of the following:
>     1.  Delusions or hallucinations;
>     2.  Disorganized thinking (speech); or
>     3.  Grossly disorganized behavior or catatonia.
>
> AND
>
> . . .
>
> C.  Your mental disorder in this listing category is "serious and persistent;" that is, you have a medically documented history of the existence of the disorder over a period of at least 2 years, and there is evidence of both:
>
>     1.  Medical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and that diminishes the symptoms and signs of your mental disorder (see 12.00G2b); and
>
>     2.  Marginal adjustment, that is, you have minimal capacity to adapt to changes in your environment or to demands that are not already part of your daily life (see 12.00G2c).

20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.03 (emphasis in original).

In his decision, the ALJ found that "[t]he claimant's mental impairments do not satisfy the paragraph 'C' criteria of the applicable mental disorder listings. The evidentiary record fails to indicate or suggest that the claimant's mental disorder is 'serious and persistent.'" (Tr. at 14). As Plaintiff points out, however, (*see* Doc. 21 at 33), the ALJ cited no evidence supporting his finding, (*see* Tr. at 14).

Nevertheless, under Eleventh Circuit precedent, "[a]n ALJ's finding as to whether a claimant does or does not meet a listed impairment need not be explicit and may be implied from the record." *Bellew v. Comm'r of Soc. Sec.*, 605 F. App'x 917, 920 (11th Cir. 2015) (citing *Hutchison v. Bowen*, 787 F.2d 1461, 1463 (11th Cir. 1986)). Additionally, an ALJ is not required to recite mechanically the evidence leading to the final determination as to whether a plaintiff meets a Listing. *Id.*

Here, the ALJ expressly addressed Listing 12.03, specifically finding that "[t]he evidentiary record fails to indicate or suggest that the claimant's mental disorder is 'serious and persistent.'" (Tr. at 14). Because an ALJ may make implicit findings that a claimant does not meet the criteria of a Listing and need not recite the evidence leading to that determination, *see Bellew*, 605 F. App'x at 920 (citation omitted), the Court finds that the ALJ properly considered whether Plaintiff met the Listing. Thus, to the extent Plaintiff argues that the ALJ's decision lacks sufficient reasoning at step three, (*see* Doc. 21 at 22), reversal is not warranted on this ground, *see Bellew*, 605 F. App'x at 920.

Moreover, upon review of the ALJ's decision as a whole, it is clear to the Court that the ALJ considered the factors relevant to paragraph C of Listing 12.03.

Importantly, the Eleventh Circuit has held that an ALJ's complete failure to discuss Listing 12.03 "does not necessarily show that the ALJ did not consider th[e] listing[]" if "the remainder of the ALJ's decision reflects that []he considered evidence of [the plaintiff's] psychotic symptoms." *See Flemming v. Comm'r of the Soc. Sec. Admin.*, 635 F. App'x 673, 676 (11th Cir. 2015) (citation omitted).  The Court finds this holding analogous to the current situation.  Specifically, because an ALJ's failure to discuss a particular Listing does not result in remand if the ALJ's decision reflects that he or she considered the evidence, *see id.*, the ALJ's failure to enumerate the evidence upon which he or she relied in determining whether a plaintiff is disabled under a Listing will not require remand if the decision reflects that the evidence was considered.  Thus, because the Court finds that the ALJ's decision reflects that the ALJ reviewed the pertinent evidence – as set forth below – remand is not warranted.  *See Paschall v. Comm'r of Soc. Sec.*, No. 8:16-cv-3312-T-JSS, 2018 WL 460202, at *4 (M.D. Fla. Jan. 18, 2018) (citing *Flemming*, 635 F. App'x 676-77).

As to the first factor, the ALJ noted that Plaintiff was admitted for psychiatric care before the relevant time period.  (Tr. at 16 (citing Tr. at 566-83)).  Yet, the ALJ highlighted that Plaintiff had improved.  (*Id.* (citing Tr. at 566-83)).  Additionally, the ALJ summarized Plaintiff's treatment notes throughout June, August, and September 2017, noting that Plaintiff's mental status examinations were normal and that she denied psychotic symptoms.  (*Id.* (citing Tr. at 571-72, 579, 587)).  Additionally, the ALJ noted that during that time Plaintiff was compliant with her medication.  (*Id.*).  The ALJ made similar findings regarding Plaintiff's treatment

notes from January, February, March, and August 2018.  (*Id.* (citing Tr. at 601, 607, 780, 788)).  Likewise, the ALJ noted that at the consultative psychological evaluation, Dr. Lori Chang, found that Plaintiff's "[t]hought processes were clear and logical for the most part with no evidence of visual/auditory/gustatory/ olfactory or tactile hallucinations [and] no indication of delusional thought processes. . . ."  (*Id.* at 16-17 (citing Tr. at 765-74)).  Furthermore, when reviewing Plaintiff's psychiatric treatment notes, the ALJ also acknowledged that Plaintiff was living with her mother and children, even noting that Plaintiff indicated that her living situation made her feel calm.  (*See id*. at 16).  Upon review of the record, the Court finds that the ALJ adequately addressed the evidence related to the first factor of paragraph C.  Thus, the Court finds that the ALJ did not err in finding that Plaintiff did not meet the criteria of paragraph C.  *See Paschall*, 2018 WL 460202, at *4.

As to the second factor, the ALJ implicitly considered evidence related to whether Plaintiff had a "marginal adjustment," which is defined as a minimal capacity to adapt to changes in one's environment or to demands that are not already part of one's daily life.  *See* 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 12.03(C).  Specifically, the ALJ addressed Plaintiff's ability to adapt and manage herself when performing the PRT.  (*See* Tr. at 14).  The ALJ determined that Plaintiff had only a mild limitation in adapting or managing herself.  (*Id.*).  In so finding, the ALJ highlighted that Plaintiff "has not reported any significant difficulties in this area," that Plaintiff can take public transportation, shop, manage her finances, that

she can perform household chores, that the evidence shows no deficiencies in hygiene, and that Plaintiff wore appropriate attire.  (*Id.* (citing Tr. at 290-97, 566-617, 765-90)).  Logic dictates that having found that Plaintiff has only a mild limitation in adapting or managing herself, the ALJ also implicitly found that Plaintiff did not have a "marginal adjustment."  *See* 20 C.F.R. § 404, Subpart P, Appendix 1, Listing 12.03(C).

Nevertheless, as discussed above, the ALJ also addressed records that show Plaintiff is calmer when she is surrounded by her family.  (Tr. at 16).  Moreover, the ALJ noted that Plaintiff left her previous position at Walmart "because of high stress levels."  (*Id.*).  Thus, it is clear to the Court that the ALJ considered the evidence relevant to the second factor of paragraph C – *i.e.*, whether Plaintiff has a marginal adjustment.

As a final matter, to the extent Plaintiff asserts that there was other evidence in the record that the ALJ did not properly assess, the Court finds the argument unavailing.  First, the ALJ cited several records from Dr. Reni – whose notes Plaintiff asserts the ALJ did not properly assess – in support of his findings that Plaintiff's mental health exams are normal and that she is calmer when she is with her family.  (*See* Tr. at 16-17).  Second, the mere fact that other evidence of record supports a different conclusion does not require remand.  Indeed, it is the ALJ's job to evaluate and weigh evidence and to resolve any conflicts in the record.  "In reviewing an ALJ's decision, [the Court] may not decide the facts anew, make credibility determination[s], or re-weigh the evidence, and [the Court] must affirm

15

the ALJ's findings if they are supported by substantial evidence, even if the evidence preponderates against them." *Jones v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 507, 508 (11th Cir. 2017) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel v. Comm'r., Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).  Accordingly, it is clear to the Court that the ALJ adequately considered the evidence relevant to the criteria of paragraph C.  (*See* Tr. at 16-17).  Thus, the Court finds that the ALJ did not err in finding that Plaintiff did not meet the criteria of paragraph C and, therefore, the Court affirms on this issue.  *See Paschall*, 2018 WL 460202, at *4.

### B. The Court Is Without Jurisdiction to Review the ALJ's Decision to Not Reopen Plaintiff's Prior DIB and SSI Applications.

Plaintiff next contends that the ALJ denied her request to reopen her prior applications without considering that she was mentally incapacitated and unrepresented at the time the appeal requests were due.  (Doc. 21 at 37).  Additionally, Plaintiff argues that the ALJ erred by failing to comply with the SSA's policy "to provide a written rationale for the denial of Plaintiff's reopening request." (*Id.* (citing Social Security Ruling ("SSR") 91-5p; 20 C.F.R. §§ 404.988 and 416.1488)).

Plaintiff contends that "the record is replete with evidence of [her] mental incapacity at the time between the filing of her initial applications for benefits and the due date to appeal the Agency's denials."  (*Id.* at 38 n.13).  Plaintiff cites and

summarizes several examples. (*Id.* at 38-39 (citing Tr. at 419-28, 431, 460, 556, 561, 563, 565)).

Additionally, Plaintiff notes that she was unrepresented at the time her first DIB and SSI applications were filed and at the time her appeal requests were due. (*Id.* at 39-40).

Moreover, Plaintiff cites to several records that she contends show: (1) that it is unclear where or if the Commissioner sent denial notices to Plaintiff; (2) the Commissioner was on notice that Plaintiff was "in a decompensated mental state;" and (3) that the Commissioner knew direct communication with Plaintiff had failed during this time period. (*Id.* at 40-41 (citing Tr. at 112-13, 114, 115, 116-17, 119, 133, 566)). Thus, Plaintiff contends that at the time the initial appeal requests were due, "the Commissioner was on [n]otice that Plaintiff could not be reached, that she was mentally incapacitated, and that she did not have an attorney or other representative to act on her behalf." (*Id.* at 41-42). Plaintiff contends that the ALJ's failure to provide a rationale for his refusal to reopen the applications constitutes a colorable due process violation. (*Id.* at 42).

Furthermore, Plaintiff argues that the ALJ "constructively" reopened the applications by utilizing evidence from the relevant time period of the previous applications to discredit Plaintiff's subjective allegations. (*Id.* (citing Tr. at 16-17)).

In response, Defendant argues that "the ALJ specifically determined that there was no basis for reopening Plaintiff's prior applications for disability insurance benefits and/or supplemental security income." (*Id.* at 43 (citing Tr. at 10)).

Additionally, Defendant notes that the Court does not have subject matter jurisdiction over the ALJ's decision not to reopen a prior administrative determination unless there is a colorable constitutional challenge. (*Id.* (citations omitted)). Defendant maintains that "Plaintiff does not allege any colorable constitutional violation that would warrant a review of a decision not to reopen" because Plaintiff was provided with multiple opportunities to participate in the application process. (*Id.* at 44).

Additionally, Defendant essentially contends that the ALJ did not constructively reopen the applications because while he referenced Plaintiff's prior work activity, he did not re-evaluate the prior application. (*See id.* at 44-45 (citations omitted)).

Generally, federal courts do not have subject matter jurisdiction to review an ALJ's decision not to reopen a prior administrative decision, absent a colorable constitutional challenge. *See* 42 U.S.C. § 405(g); *Califano v. Sanders,* 430 U.S. 99, 107-09 (1977); *Wolfe v. Chater,* 86 F.3d 1072, 1078-79 (11th Cir. 1996). The Eleventh Circuit has held that a plaintiff makes a colorable constitutional claim when "mental illness precluded [the plaintiff] from litigating [her] claim [for disability benefits] because it prevented [her] from proceeding from one administrative level to another in a timely fashion." *Elchediak v. Heckler,* 750 F.2d 892, 894 (11th Cir. 1985) (citations omitted). When this occurs, the alleged due process deficiency does not arise from the notices sent by the SSA but rather "the claimant's [in]ability to understand and act on that notice." *Id.* (citation omitted).

18

Additionally, the Eleventh Circuit has held that courts have jurisdiction over an ALJ's decision not to reopen a prior decision where there has been a *de facto* reopening of the previous decision. *Cherry v. Heckler,* 760 F.2d 1186, 1189 (11th Cir. 1985). A *de facto* reopening occurs when a previous administrative decision is "reconsidered on the merits to any extent and at any administrative level." *Id.*

As an initial matter, the Court notes that the ALJ explicitly denied the request to reopen the prior proceedings. (Tr. at 10). Accordingly, the Court is without jurisdiction to review this decision unless one of the exceptions apply. Because Plaintiff asserts that the Court has jurisdiction under both theories – *i.e.*, a colorable constitutional claim and a *de facto* reopening – the Court considers each ground below.

As to Plaintiff's argument that she has raised a colorable constitutional claim, the Court finds the argument unavailing. Under the Eleventh Circuit's decision in *Elchediak v. Heckler*, a plaintiff raises a colorable constitutional claim where she shows that: "(1) [s]he suffers from a medically-documented mental illness which serves as the basis for [her] disability claim; (2) on [her] first application [s]he was without the assistance of counsel or other suitable representation; and (3) [s]he cannot assert a new claim for benefits because [s]he now lacks insured status." *Elchediak v. Heckler*, 750 F.2d 892, 895 (11th Cir. 1985). If Plaintiff satisfies each of the three *Elchediak* prongs, the Court may remand her case to the Commissioner with instructions to determine whether her mental illness prevented her from understanding and pursuing her administrative remedies following the denial of her first applications for

19

benefits. *Campbell v. Astrue*, No. 3:11CV326/RV/EMT, 2012 WL 2848898, at *3 (N.D. Fla. June 11, 2012), *report and recommendation adopted,* No. 3:11CV326/RV/EMT, 2012 WL 2849214 (N.D. Fla. July 11, 2012) (citing *Elchediak* 750 F.2d at 894). As noted above, if a plaintiff satisfies the *Elchediak* test, the alleged due process deficiency does not arise from the notices sent by the SSA but rather "the claimant's [in]ability to understand and act on that notice." *Elchediak* 750 F.2d at 894. The Court considers the *Echediak* prongs, beginning with the third prong, below.

The Court first considers whether Plaintiff has shown that she meets the third prong – that "[s]he cannot assert a new claim for benefits because [s]he now lacks insured status." *Elchediak*, 750 F.2d at 895. Although the parties do not cite,[2] and the Court has not found, any case by or within the Eleventh Circuit interpreting this prong, the Court finds that Plaintiff clearly does not satisfy it here. As the ALJ noted, Plaintiff met the insured status through September 30, 2019. (Tr. at 12). The date of the ALJ's decision, however, was March 28, 2019. (*Id.* at 19). Thus, Plaintiff still has an opportunity to seek and be awarded benefits. Specifically, there has been no adjudication on whether Plaintiff has been under a disability from March 29, 2019, the day after the ALJ's decision through the date last insured. Thus, Plaintiff cannot meet the third prong because she may yet assert a new claim for benefits,

---

[2] Tellingly, Plaintiff fails to acknowledge this prong in her argument. (*See* Doc. 21 at 37-42).

which may include a relevant period of time that pre-dates her date last insured.  *See Elchediak*, 750 F.2d at 895.

To the extent that Plaintiff attempts to argue that she has raised a colorable constitutional claim because she may not have received the Notices, the Court finds the argument not persuasive.  First, the SSA made multiple attempts to contact Plaintiff, including calling the phone number provided by Plaintiff, mailing the documents to her address, and attempting to contact her through a third party on three separate occasions.  (*See* Tr. at 124-27).  Importantly, to the extent Plaintiff's mailing address may have changed, she was under an obligation to update her mailing address with the SSA.  *See* 20 C.F.R. § 416.708(a) ("You must report to us any change in your mailing address and any change in the address where you live.").  Thus, the Court finds that the SSA gave Plaintiff sufficient opportunity to participate in the application process and her failure to do so cannot be imputed to the SSA under these circumstances.  Finally, the argument fails for the same reason the previous argument fails — Plaintiff has not lost her opportunity to assert a new claim for benefits, which includes a relevant period of time that pre-dates her date last insured.  Accordingly, the Court finds that Plaintiff has failed to raise a colorable constitutional claim.

As to Plaintiff's argument that the ALJ constructively – or *de facto* – reopened her case, the Court is unpersuaded.  As noted above, a *de facto* reopening occurs when a previous administrative decision is "*reconsidered on the merits* to any extent and at any administrative level."  *Cherry,* 760 F.2d at 1189 (emphasis added).  Here, the

ALJ clearly did not reconsider any evidence on the merits. (*See* Tr. at 16-17).
Rather, the ALJ broadly noted that "prior to the period at issue [Plaintiff] had been
admitted for psychiatric care due to paranoid behaviors" and that she "was able to
work full time at Walmart after being Baker acted." (*See* Tr. at 16, 17). The ALJ's
broad references did not equate to a reconsideration on the merits of the evidence but
simply noted Plaintiff's history to support the ultimate conclusion that Plaintiff was
not disabled as of May 20, 2017, through the date of the decision. (*See id.*).

In other words, it is clear to the Court that the ALJ did not reconsider the
evidence, but simply acknowledged evidence that predates the relevant time period
as a reference point while considering more recent evidence. *See Brown v. Sullivan,*
921 F.2d 1233, 1237 (11th Cir. 1991) ("Although the Appeals Council and the ALJ
commented on [the plaintiff's] condition prior to March 1, 1981 while considering
her second application, they did so while considering newly proffered evidence, and
these statements did not amount to a reconsideration of the merits of the denied first
application."). The majority of the ALJ's decision relates to the period of time after
May 20, 2017, and those broad references to Plaintiff's history cannot amount to a
reconsideration on the merits. *See Huebner v. Astrue*, No. 8:11-cv-00872-T-17, 2012
WL 3893565, at *5 (M.D. Fla. Aug. 20, 2012), *report and recommendation adopted,* No.
8:10-cv-872-T-17, 2012 WL 3893542 (M.D. Fla. Sept. 7, 2012) (finding that the
ALJ's broad references to Plaintiff's history of chronic disorders of the spine does not
amount to a reconsideration on the merits of the prior evidence).

In sum, the Court finds that Plaintiff has failed to either raise a colorable constitutional claim or show that the ALJ *de facto* reopened her previous administrative decision. Accordingly, the Court is without jurisdiction to review the ALJ's decision not to reopen a prior administrative decision. *See* 42 U.S.C. § 405(g); *Califano,* 430 U.S. at 107-09; *Wolfe,* 86 F.3d at 1078-79.

### C. The ALJ's RFC Is Supported by Substantial Evidence.

As her final argument, Plaintiff contends that "[t]he ALJ's RFC finding is unsupported due to his errors in assessing the 'paragraph C' criteria of Listing 12.03." (Doc. 21 at 45). Specifically, Plaintiff argues that had the ALJ properly considered the paragraph C criteria, he would have imposed additional limitations on Plaintiff. (*Id.*). Additionally, Plaintiff contends that the RFC does not account for her "severe" vertigo. (*Id.*).

In support, Plaintiff first argues that the RFC finding does not show adequate contemplation of the relevant paragraph C evidence, which shows that Plaintiff has limited functional ability when in highly supported environments. (*Id.* at 46). Plaintiff also essentially contends that the ALJ erred in his assessment of Dr. Reni's opinions by using the incorrect regulations. (*See id.* at 46-47 (citations omitted)).

Additionally, Plaintiff notes that although the ALJ found that Plaintiff's vertigo was severe, the RFC permits a full range of work at all exertional levels. (*Id.* (citing Tr. at 15)). Plaintiff asserts that "[t]his finding is both unsupported by the evidence and is internally inconsistent," and, therefore, remand is warranted. (*Id.* at

47-48 (citations omitted)).  Ultimately, Plaintiff maintains that had the ALJ properly

considered the evidence, he would have found Plaintiff disabled in accordance with

the VE's testimony.  (*Id.* at 48 (citation omitted)).

In response, Defendant argues that "[t]he ALJ properly considered the

relevant evidence in assessing Plaintiff's RFC."  (*Id.* at 49 (citing Tr. at 12-19)).  In

support, Defendant asserts that the ALJ properly determined that Plaintiff's

impairments did not meet Listing 12.03 and that the ALJ properly evaluated

Plaintiff's mental impairments by using the PRT.  (*Id.*).  Defendant highlights that

the ALJ found that Plaintiff had only mild limitations in understanding,

remembering, or applying information and in adapting or managing oneself and

moderate limitations in interacting with others and in concentrating, persisting, or

maintaining pace.  (*Id.* (citing Tr. at 14)).  Defendant maintains that the ALJ

properly used his PRT findings and included limitations in Plaintiff's RCFC related

to the categories in which Plaintiff had moderate limitations.  (*Id.* at 49-50).

Specifically, Defendant contends that the RFC "accounted for Plaintiff's moderate

limitations in interacting with other[s] and concentrating, persisting, and maintaining

pace, by limiting Plaintiff to simple, simple, [sic] routine, tasks and making simple

work related decisions; never working with the general public; occasionally working

with supervisors and coworkers; routine work setting; and occasional changes in

work routine."  (*Id.* at 50 (citing Tr. at 16)).

Moreover, Defendant essentially contends that the ALJ properly considered the medical opinions from the relevant time period and did not have to consider evidence prior to the relevant period. (*See id*. at 50-51 (citations omitted)).

Finally, Defendant argues that the ALJ properly considered Plaintiff's vertigo in the RFC because the ALJ relied on the opinion of Dr. Chang – which included a diagnosis of vertigo – and Plaintiff's high-level of activities of daily living to determine Plaintiff's RFC. (*Id.* at 51-52 (citations omitted)).

The RFC is "the most" Plaintiff can do despite her physical and mental limitations. 20 C.F.R. § 404.1545(a)(1). To determine a plaintiff's RFC, the ALJ must use all relevant medical and other evidence in the record. *Phillips*, 357 F.3d at 1238; 20 C.F.R. § 404.1545(e). When the Commissioner's decision is supported by substantial evidence, however, the Court will affirm, even if the Court would have reached a contrary result as the ALJ and even if the Court finds that "the evidence preponderates against" the Commissioner's decision. *See Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

As to Plaintiff's argument that had the ALJ adequately considered the Listing 12.03(c) criteria, he would have imposed additional limitations, the Court finds the argument unavailing. As addressed fully above, the Court finds that the ALJ adequately considered the evidence relevant to the paragraph C criteria. (*See* Tr. at 15-18). Moreover, to the extent Plaintiff cites other evidence of record that she contends supports a different conclusion, the Court finds this evidence does not require remand. Again, it is the ALJ's job to evaluate and weigh evidence and to

25

resolve any conflicts in the record.  "In reviewing an ALJ's decision, [the Court] may not decide the facts anew, make credibility determination[s], or re-weigh the evidence, and [the Court] must affirm the ALJ's findings if they are supported by substantial evidence, even if the evidence preponderates against them." *Jones v. Soc. Sec. Admin., Comm'r*, 695 F. App'x 507, 508 (11th Cir. 2017) (citing *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *Winschel v. Comm'r., Soc. Sec. Admin.*, 631 F.3d 1176, 1178 (11th Cir. 2011)).

Moreover, the Court finds that the ALJ properly accounted for Plaintiff's moderate limitations in (1) interacting with others and (2) concentrating, persisting, and maintaining pace, (Tr. at 14), by limiting Plaintiff to "understand, remember, and carry out simple, simple, [sic] routine, tasks and make simple work related decisions; never work with the general public; occasionally work with supervisors and coworkers; routine work setting; occasional changes in work routine," (Tr. at 15).

Notably, the Eleventh Circuit has found that similar limitations sufficiently account for moderate mental limitations if the evidence shows that Plaintiff can perform the work permitted by the RFC.  *See Mijenes v. Comm'r of Soc. Sec.*, 687 F. App'x 842, 846 (11th Cir. 2017) ("Because the medical evidence showed that Mijenes could perform simple, routine tasks despite her limitations in concentration, persistence, and pace, the ALJ's limiting of Mijenes's functional capacity to unskilled work sufficiently accounted for her moderate difficulties in concentration, persistence, and pace."); *Ybarra v. Comm'r of Soc. Sec.*, 658 F. App'x 538, 542 (11th

26

Cir. 2016) (concluding that the ALJ accounted for the plaintiff's moderate limitations in social function and maintaining concentration, pace, and persistence by limiting the plaintiff "to sustaining concentration for two-hour periods on 'short, simple instructions' and to an occupation 'with only occasional contact with co-workers and the general public on routine matters'" because there was substantial record evidence to support this determination); *see also Duval v. Comm'r of Soc. Sec.*, 628 F. App'x 703, 713 (11th Cir. 2015) ("[T]he ALJ accounted for Mr. Duval's moderate limitations in concentration, persistence, or pace by limiting him to simple, routine, and repetitive tasks, which medical evidence showed he could perform."). Thus, the RFC adequately accounts for Plaintiff's moderate limitations if substantial evidence shows she can perform the RFC despite her limitations.

In his RFC narrative, the ALJ highlighted Dr. Lori Chang's findings that there are "moderate limitations in [Plaintiff's] ability to understand and remember complex instructions, carry out complex instructions, and make judgments on complex work-related decisions. [Plaintiff] was also found to have moderate difficulties interacting with co-workers and responding appropriately to usual work situations and changes in a routine work setting." (Tr. at 17-18). The ALJ found Dr. Chang's opinions persuasive because they "are well supported by a thorough examination of [Plaintiff], and they are consistent with the [Plaintiff's] high-level activities of daily living." (*Id.* at 18). The ALJ then limited Plaintiff accordingly, ensuring that her RFC accounted for each of Dr. Chang's opined limitations. (*Id.* at 15). Thus, the Court finds that substantial evidence of record supports Plaintiff's

ability to perform work in her RFC despite her moderate limitations.  *See Ybarra*, 2016 WL 5417730, at *3.

Next, to the extent Plaintiff asserts that the ALJ should have considered Dr. Reni's opinions consistent with the Social Security regulations in place at the time of Plaintiff's prior March 14, 2017 applications, the Court finds this argument unpersuasive.  As noted above, the SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  Although Plaintiff correctly notes that her prior applications would be governed by the former rules, (*see* Doc. 21 at 46-47), the ALJ explicitly denied Plaintiff's implicit request to reopen her prior applications.  (Tr. at 11).  As the Court has already determined that it does not have subject-matter jurisdiction to review this decision, the Court must accept the ALJ's determination.  Accordingly, Plaintiff has provided no basis for the Court to construe the earlier filing date as the applicable filing date in this case.  Thus, the Court finds that the new regulations apply to Plaintiff's case.

To the extent Plaintiff may have attempted to argue that the ALJ did not properly weigh any opinion by Dr. Reni, the Court finds that Plaintiff has abandoned the argument.  *See Stowe v. Soc. Sec. Admin., Comm'r*, No. 20-14025, 2021 WL 2912477, at *7 (11th Cir. July 12, 2021) (citing *Sapuppo v. Allstate Floridian Ins. Co.*, 739 F.3d 678, 681 (11th Cir. 2014) for the proposition that "a party abandons a claim not adequately briefed on appeal and fails to adequately brief [a] claim when he

raises it in a perfunctory manner without supporting arguments or authority"). Specifically, Plaintiff fails to cite a single opinion by Dr. Reni as an example of the ALJ's alleged error.  (*See* Doc. 21 at 46-47).  Rather, Plaintiff vaguely asserts the argument in a single conclusory sentence, accompanying her unpersuasive argument that the former regulations govern her case.  (*See id.*).[3]  Importantly, not all treatment notes constitute opinions under the regulations.  *See* 20 C.F.R. § 404.1527(a)(2) (defining medical opinions as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions").  Plaintiff's failure to cite a single record that she asserts constitutes an opinion leaves the Court to guess.  The Court declines to make Plaintiff's argument for her and instead finds the argument abandoned.  *See Stowe*, 2021 WL 2912477, at *7.

Finally, as to Plaintiff's argument that remand is warranted due to the ALJ's alleged error in not including limitations relating to Plaintiff's vertigo, the Court finds the argument unavailing.  First, Plaintiff has made no attempt to argue what limitations should have been imposed or to cite any medical opinion in which an

---

[3] Plaintiff's failure to cite to a single opinion of Dr. Reni's is even more problematic when the argument is considered as part of Plaintiff's argument that the former regulations govern her case.  (*See* Doc. 21 at 46-47).  Specifically, it is unclear to the Court whether any opinion evidence that Plaintiff asserts the ALJ failed to properly consider was from the relevant time period.  Having said that, the Court notes that many of Dr. Reni's treatment notes are from the relevant time period, (*see, e.g.*, Tr. at 571-72, 575-80, 586-88,590-607), but the Court declines to assume which treatment notes Plaintiff asserts are opinions.

acceptable medical source found that Plaintiff has such limitations.  (Doc. 21 at 47-48).  Rather, Plaintiff essentially broadly argues that because the ALJ found that the impairment was severe, he was under an obligation to reconcile or explain the lack of a corresponding RFC limitation.  (*Id.* (citations omitted)).  In failing to articulate any additional limitation that she asserts should have been imposed – or otherwise cite an opinion in which a medical source found that a limitation was necessary – Plaintiff failed to meet her burden to show she is disabled.  *Bowen*, 482 U.S. at 146 n.5.

Nevertheless, even if the Court were persuaded by Plaintiff's argument, remand would not be warranted because any error would be harmless.  An incorrect application of the regulations will result in a harmless error if a correct application of the regulations would not contradict the ALJ's ultimate findings.  *Denomme v. Comm'r, Soc. Sec. Admin.*, 518 F. App'x 875, 877 (11th Cir. 2013) (citing *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983)); *see also Edwards v. Sullivan*, 937 F.2d 580, 586 (11th Cir. 1991) (holding that remand is not warranted unless an error shows "unfairness" or "clear prejudice").

Upon review of the record, it appears that the only opinions recommending exertional limitations recommend that Plaintiff be limited to never "[c]limbing ladders/ropes/scaffolds" and avoid concentrated exposers to hazards such as machinery and heights.  (*See* Tr. at 141, 151-52).  Notably, the ALJ found these opinions unpersuasive and was, therefore, not obligated to adopt them.  *See Freyhagen v. Comm'r of Soc. Sec. Admin.*, No. 3:18-cv-1108-J-MCR, 2019 WL 4686800, at *2 (M.D. Fla. Sep. 26, 2019) (noting that the "new regulations are not inconsistent

with Eleventh Circuit precedent holding that 'the ALJ may reject any medical opinion if the evidence supports a contrary finding'") (citation omitted).  The Court has not found, and Plaintiff has not cited, any other opinion that recommends imposing additional limitations related to Plaintiff's vertigo.

Nevertheless, during the examination of the VE, the ALJ asked several hypotheticals, including one that imposed additional limitations that relate to Plaintiff's vertigo.  (*See* Tr. at 79).  Specifically, the ALJ first asked the VE to assume an individual with an RFC that mirrors the one ultimately imposed:

> Please assume a hypothetical individual, vocationally situated as a claimant with the same work history and education.  And the hypothetical individual can perform the functions of all exertional work; frequently handle and finger; is able to understand, remember, and carry out simple repetitive tasks; and make simple work-related decisions that require no interaction with the general public; only occasional interaction with coworkers and supervisors; and is in a routine work setting that has only occasional changes in the work routine.

(*Id*. at 78).  With this RFC, the VE testified that the individual could perform the routing clerk position, which was Plaintiff's prior relevant work.  (*Id*. at 78-79).  The ALJ then added additional limitations on the hypothetical individual:

> Please assume the same ability as in hypothetical one.  Such an individual is able to perform all light exertional work, never climb ladders or scaffolds, occasionally balance – strike that – occasionally stoop and kneel, never crawl, frequently handle and finger as well, avoid all unprotected heights, and the same mental limitations.

(*Id*. at 79).  With this RFC, the VE testified that the individual could still perform the routing clerk position.  (*Id*.).

Thus, even if the ALJ erred in failing to include additional limitations in Plaintiff's RFC, any error was harmless because the additional limitations would not have changed the ultimate findings. *See Denomme*, 518 F. App'x at 877. Rather, even with these additional limitations, the ALJ would still have found that Plaintiff could perform her past relevant work as a routing clerk. (*See* Tr. at 18, 79). Thus, the Court finds that remand is not warranted on this ground.

**VI.      Conclusion**

Upon consideration of the parties' submissions and the administrative record, the Court finds that the ALJ's decision is due to be affirmed. Accordingly, the Court **ORDERS** that:

1.      The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g).

2.      The Clerk of Court is directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**DONE AND ORDERED** in Fort Myers, Florida on August 19, 2021.

_____
Mac R. McCoy
United States Magistrate Judge

Copies furnished to:

Counsel of Record

Unrepresented Parties